Stock Yards National Bank v. Jerry F. Smith et al.

Decided April 28, 1910.

**1.—Note—Forgery—Estoppel.**

Mere delay, by one whose name has been forged to a promissory note, to notify the holder of the forgery, will not estop him from asserting it, in the absence of proof that the holder suffered pecuniary loss thereby.

**2.—Same.**

Evidence considered and held to support a finding that the holder of a promissory note suffered no pecuniary loss by the delay of one whose signature to such note had been forged to notify the holder, on being advised that his name was on the note, that it was a forgery, though the forger, maker of the note, was enabled thereby to abscond and escape arrest.

**3.—Negligence—Action on Note.**

Mere negligence by one whose name was forged to a note, in delaying for a short time to notify the holder that his signature was a forgery, after learning the fact, could only give a cause of action for damages by such negligence, and did not create a right of action against him on the note.

**4.—Cases Distinguished.**

Weinstein v. Bank, 69 Texas, 38, and San Antonio v. Iron City Bank, 92 Texas, 436, distinguished from present case.

Appeal from District Court of Tarrant County. Tried below before Hon. R. H. Buck.

*Wm. J. Berne,* for appellant.

*Lassiter & Harrison* and *Morrow & Smithdeal,* for appellee.

LEVY, Associate Justice.—The suit was brought by appellant against Jerry F. Smith, F. M. Files and T. J. Files, to recover the amount of three promissory notes purporting to have been executed by them and payable to the order of appellant. The suit was dismissed as to Smith, and on trial was dismissed as to T. J. Files by appellant. Appellee plead that he had not executed the notes, and that his name thereto had been forged. To this appellant plead estoppel, claiming that appellee, after receiving notice of the forgery, failed to notify the appellant of the forgery in time to apprehend and talk with Smith, who forged the name, and that it resulted in damage to appellant. The case was tried to a jury on special issues, and on its findings judgment was rendered for the appellee. That J. F. Smith forged the name of appellee to the three notes for different amounts, and of different dates, in suit, is undisputed in the record. When the first note was due the appellant wrote a letter to appellee stating: "Jerry F. Smith's note for $4,500 will be due September 1st, 1905, and we have so advised him, but thought it advisable to let you know also, as in the event Mr. Smith is not able to pay the note at maturity that you will be." Prior to this time the appellant had not given the appellee notice of the fact that it held the notes purporting to bear his signature, and it appears from the record that

appellee did not know of it sooner. The letter reached appellee at Itasca, his home, either on August 30th or September 1st—it is not clear which. On the date appellee received the letter J. F. Smith also came to see appellee to obtain a release of a mortgage on land in Bosque County. Appellee asked Smith what the letter meant. Smith admitted the making of the note, and said "he needed the money." Appellee told Smith that he would notify the bank at once, and Smith said he would pay the bank if he would not notify them for a few days. Appellee replied he would wait two or three days before notifying the bank, and about the end of a week appellee received a letter from Smith saying he had settled the matter. Smith lived in Johnson County. Appellee had no motive in agreeing to wait, and believed Smith's letter was true. On September 14, 1905, the appellant, not having received a reply to the first letter, wrote appellee again about the note, and appellee mailed a reply thereto on September 17, 1905, stating that it was forgery. The appellee received the reply on September 18, 1905. In the forenoon of the 18th, and before receiving the letter, appellant wired appellee about the note, and appellee at once answered by telephone that it was a forgery. After receiving the reply as to the first note, and on September 18th, appellant wrote appellee about the second note saying, "Did you ever sign a note of Jerry F. Smith dated Dec. 5, 1904, for $4,687.50, due six months after date of the note? We now have in our possession his renewal of this note." On September 20, 1905, the appellant received a reply from appellee stating, "In reply to yours of 18th inst., beg to state I did not sign this note, nor have I signed any paper for him in the past 18 months." Smith absconded and fled the country about September 18, 1905, and his whereabouts was unknown, but appellee had nothing to do with his absconding. It conclusively appears that appellee received no benefit from any of the money borrowed by Smith from the bank, and that there were no business relations in respect to the notes between appellee and Smith, nor appellee and the appellant, nor did appellee make any representations to the bank about Smith or the notes, or forgery, or in any way ratify or adopt the forged signature. Appellee never learned of the forgery of the last two notes until after Smith had absconded. It conclusively appears that Smith was insolvent, and had sold his homestead, and what property he had was fully covered with prior liens, and that appellant could not recover the debt out of any property of Smith's, and that no injury or loss resulted to appellant by the delay of appellee to notify the bank that his name was forged. It further appears that at the time Smith had prosecuted his business by a series of forgeries on other banks, and his course of crime had come to an end by indictments in Hill and Johnson Counties. The evidence fully supports the findings of the jury, which were in favor of the appellee.

*After stating the case.*—Appellant has presented a number of assignments of error, which are here considered for ruling. The questions made for direct ruling are, whether appellant has established that appellee is estopped to deny that his signature to the notes in suit is a forgery, and the extent of the estoppel. The suit is upon

three promissory notes; one for $4,500, another for $4,700, and another for $7,768, each executed at different times and maturing at different dates. The notes were each signed by J. F. Smith and appellee as makers, and payable to the order of appellant bank. The signature of J. F. Smith was genuine. It conclusively appears that J. F. Smith, without any authority whatever, deliberately forged the name of appellee to each note as a maker thereof, along with himself, and borrowed money thereon from the appellant. Appellant does not contend in the appeal that the signature of appellee is not a forgery, but seeks to hold appellee liable on the ground of estoppel to deny his signature by reason of his failure to notify the appellant bank of the forgery earlier than he did. The findings of the jury are that appellee did not notify the appellant bank within a reasonable time after he learned of the forgery that his signature to the note was a forgery, but that appellant suffered no injury by the delay. Appellant does not claim that it suffered any pecuniary loss and damage by the delay of appellee in notifying it of the forgery, but does claim that it was deprived of a valuable right. The precise injury claimed through the delay is the deprivation of the right to arrest Smith and confer with him, and securing his testimony, and securing the testimony of other persons whose names he might be able to give as to whether or not appellee had authorized his name to be signed to the note, or after the forgery of his name thereto he had ratified the same, and from endeavoring to induce Smith to pay or secure the note by moral suasion or otherwise. If the evidence raises any issue of fact upon which the legal liability of appellee could be predicated, the findings of the jury having determined it in favor of appellee, their findings would be conclusive and should end the controversy. We think the conclusion of the jury that no injury in point of fact is shown by the evidence to have resulted to appellant by reason of the failure of appellee to notify the appellant of the forgery, assuming that appellee owed the legal duty to do so, is warranted by the testimony. It is conclusively shown, and appellant does not contend to the contrary, that at the time in question Smith was insolvent, and that he previously sold his homestead, and what property he had left was fully covered by previous mortgages, and that none of the notes, or any part of them, as found by the jury, could have been collected out of any property of Smith's. That no pecuniary loss was suffered or civil remedy at law deprived by the delay in evidence on the part of appellee, it can be said by the record was conclusively proved. It can be said that it conclusively appears that Smith absconded and fled the country and his whereabouts was unknown from and after September 18, 1905. It can be said from the record that appellee had nothing to do with the escape or absconding of Smith, and did not know of his intention or purpose to do so. Smith lived in Johnson County and appellee in Hill County. On the issue of the desire to arrest Smith the record does not indicate that appellant ever offered to file any complaint against Smith after it knew of the forgery, though it did employ on the date of the absconding of Smith a detective to hunt for him. It did not notify any sheriff or other peace officer of the forgery. Smith was indicted in both Johnson and Hill

Counties in October, 1905, on other and distinct forgeries from these in suit on the part of other persons. The record warrants the finding, however, that between September 1 and 10, 1905, appellant could have effected the arrest by complaint if it had known of the forgery. It is conclusive, we think, from the evidence, that no benefit or recoupment could in reality have been received by appellant from moral suasion and conference. Smith had deliberately committed like forgeries at the time in Hill and Johnson Counties, and had admitted his guilt, and was in his own mind preparing and did flee the country. He had been conducting his business upon a series of forgeries on banks, and his course of crime had run to the end. As to the claim as to opportunity to confer with Smith and secure his testimony, and the testimony of other persons as to whether appellee had authorized his name to be signed, or after the forgery had ratified the same, the record does not even indicate that appellee authorized or ratified the signature. There were no business dealings whatever in respect to the note between Smith and appellee, or appellee and the bank. Appellee never received any benefit from the money that was borrowed. Appellee never made any representations to the bank about the note or forgery except to declare the signature a forgery. The record does not even indicate that Smith would have denied the forgery. It does show that he admitted the forgery to appellee. The evidence further shows that at the time he was confronted with the notes of the Citizens National Bank of Hillsboro, and the Cleburne National Bank, he in each instance made no denial, but admitted the guilt. The record, therefore, is sufficient to warrant the jury's conclusions that no pecuniary loss or injury was occasioned to appellant by the negligence, if any, of appellee. It also shows that if appellant was deprived of any right to arrest and use moral suasion, or otherwise, to collect or secure the payment of the notes, or confer with Smith, in point of fact it was a simple or naked right, without pecuniary advantage or civil remedy following the exercise of the right. It was a right which, in the circumstances, if allowed to be exercised, would have accomplished no recoupment or pecuniary advantage to appellant. The grounds relied on for estoppel to deny the signature as forged are adverted to. It appears that appellee first learned of his name's being forged to the first note of $4,500 on September 1, 1905. The bank had notified appellee of its maturity and demanded payment of the note, and Smith informed appellee of the forgery. The notice was not answered. Appellee claims and proves the reason he never answered the notice of the bank was that Smith promised to go and settle the same if he would not inform the bank promptly of the forgery, and within a week Smith wrote him a letter stating that he had made settlement with the bank. On September 14, 1905, the appellant bank again wrote a letter informing appellee of the note and requesting payment, and appellee replied on the 17th of September, 1905, to the statement informing the bank that his signature was a forgery and not genuine. On receipt of this reply appellant then wrote appellee about the second note for $4,700, and appellee promptly replied that he had not executed same or any other note in the eighteen months preceding. It must be said from the record that

the appellee, on learning of the forgery of the second and third notes, promptly notified the appellant of the forgery of his name thereto. The jury found that appellee never knew of the forgery of the second and third notes before the absconding of Smith, and this is supported by the record. The record does not indicate, nor does appellant contend, that any representation whatever was made by appellee about the notes or forgery or his signature to appellant, except the bare denial that he had ever signed same and that his signature was a forgery. The record therefore conclusively shows that the ground relied on for holding appellee responsible to appellant for the notes rests in the fact that appellee knew his name was forged as a maker to the first note for $4,500, on September 1, 1905, and did not notify the appellant that his signature was a forgery until September 18, 1905. The jury found that the delay on the part of appellee to notify the appellant of his name's being forged was not a reasonable time in which to give such notice. But the jury further found that the delay did not cause any injury to appellant. Clearly, in the facts, the doctrine of ratification or adoption of a forged instrument can not be made applicable. It is conclusive that appellee was an utter stranger to the transaction, receiving no benefit whatever therefrom, and having no business connection therewith, and made no representations or admissions about the note or the forged signature. Appellee's only statement to the bank was a concise pronouncement that his signature was a forgery. Appellant was not misled by any other statement, because appellee made no other statement. His silence was of short duration, and appellant lost nothing thereby except the satisfaction of arrest of Smith. The facts as seen present, therefore, the ground of mere silence to effect estoppel. In the absence of some obligation existing between the parties growing out of contract, express or implied, from the custom and usage of business, or ratification or adoption of a forged instrument, does mere silence of short duration, effecting no injury or loss, create estoppel of the person whose name is forged as a maker of a promissory note from successfully asserting the forgery, and to the extent of the amount of the notes? We think not. 2 Dan. on Neg. Instruments, sec. 1354. See on silence constituting estoppel, 2 Pom. Eq., 805; 16 Cyc., 759; Philadelphia, W. & B. Ry. Co. v. Dubois, 79 U. S. (12Wall.), 47, 20 L. ed., 265. It is because there is no legal duty owing by appellee in the premises to assist or give aid to appellant in detecting or ferreting out the forgery. If it can not be said that the mere silence of appellee was conduct amounting to an adoption of the notes, and we think it could not be said, then it follows, we think, that the suit can not be maintained on the notes themselves, and judgment was properly entered for appellee.

If the contention of appellant must be predicated on negligence, then we do not think, as a matter of law, that negligence can be the foundation for payment of the notes sued on as the damages recoverable. It is a principle of law that if any damage or loss has accrued by the negligence of another the damages sustained may be recovered. A tort, though, can not be converted into a contract. If the finding of the jury in the facts of the case can be construed as a finding that

the delay of appellee was a negligent act, then can it be said that the loss of the payment of the debt. or a valuable right in respect to the forger or the debt was, as a matter of law, the effect of the appellee's negligence? We think not. The finding of the jury is that no injury resulted from the delay, and the finding is warranted by the evidence, and this finding warrants the judgment in appellee's favor. If the delay was negligence, and without consequences of loss or pecuniary injury to appellant, the delay must remain, as found by the jury, without consequences to appellant. But we do not think negligence could be predicated in the absence of a duty owing, and none was shown in the case, we think. Ewart on Estoppel, p. 112; 16 Cyc., 772. Therefore, on that ground, as a further ground, the judgment was properly entered in appellee's favor.

Many cases are cited by appellant as supporting the contentions made by it in the case. But the cases are based upon the idea that there were obligations existing between the parties growing out of contract, and from the customs and uses of business dealings connected with the transactions, and from adoption and ratification of the forged signature. A clear distinction exists between the principles which apply to such relations between the parties and the instant case. It would require too much space to discuss all the cases. The case of Weinstein v. Bank, 69 Texas, 38, 6 S. W., 171, was an action to recover money paid on forged checks. There the depositor failed to examine his pass book statement given him, and because of his failure to examine same in proper time estoppel was allowed as to the forged check paid. It is upon the principle of admission that the account rendered· was correct that estoppel was predicated. The business dealing and purpose of the statement given created a duty to know whether the account was correct, and the consequent duty to promptly report a forgery. In the instant case no such duty devolved upon appellee. The case of Bank of San Antonio v. Iron City Bank, 92 Texas, 436, 49 S. W., 368, does not involve estoppel as to forged paper.

Having concluded that the proper judgment was entered in the case, all the assignments are overruled and the judgment is affirmed.

*Affirmed.*

Writ of error refused.